# IN THE COURT OF APPEALS OF IOWA

No. 20-1221
Filed November 30, 2020

**IN THE INTEREST OF K.S., S.T., and A.T.,**
**Minor Children,**

**N.T., Mother,**
       Appellant,

**D.L., Father of S.T.,**
       Appellant.

_____

Appeal from the Iowa District Court for Cherokee County, Mary L. Timko, Associate Juvenile Judge.

A mother and father separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**

T. Cody Farrens of Fankhauser, Farrens & Rachel, P.L.C., Sioux City, for appellant mother.

Wally Miller and Adam Miller of Miller, Miller, Miller P.C., Cherokee, for appellant father of S.T.

Thomas J. Miller, Attorney General, and Tabitha J. Gardner, Assistant Attorney General, for appellee State.

Lesley D. Rynell of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

A mother of three children appeals the termination of her parental rights. She argues the removal orders for all children are deficient; contests termination pursuant to Iowa Code section 232.116(1)(d), (f), (h), (i), and (*l*) (2020); and argues termination is not in the children's best interests. The father of one child separately appeals the termination of his parental rights.[1] He contests termination pursuant to Iowa Code section 232.116(1)(b), (d), (h), (i), and (*l*).

## I.     Background Facts and Proceedings

This case involves a mother of three children and the father of the middle child. The oldest child first came to the attention of the Iowa Department of Human Services (DHS) in March 2016. During this intervention, the oldest child was removed from the mother's and maternal grandmother's care due to methamphetamine use by both women. The mother eventually engaged in substance-abuse treatment, and the child was returned to her custody. In the fall of 2017, the child tested positive for methamphetamine for the first time. The child was exposed to the substance in the maternal grandfather's home, where the mother and child spent time in violation of a court order that the mother and child not see either maternal grandparent. The child was placed in foster care. The mother's second child was born in late 2017. The second child remained in the mother's custody, and the oldest child was returned to the mother's care. In June 2018 the case was closed.

---

[1] The father of the oldest child consented to termination of his parental rights. The father of the youngest child has been granted additional time to work toward reunification.

The family came to the attention of DHS for the second time in September 2018, based on allegations the mother was involved with a paramour who used drugs and engaged in domestic violence. The mother and children began to live with the paramour later that year and then moved into the maternal grandmother's home. Due to the grandmother's history of using methamphetamine, the mother and children created a safety plan with DHS. Both children tested positive for methamphetamine in February 2019. The mother then failed to appear for drug testing. The mother absconded with both children and was found in Oklahoma on February 18, 2019. The children were returned to Iowa and placed in foster care. The mother also returned and began to participate in services. She told providers she was distancing herself from her abusive paramour and would not pursue a relationship until he was sober, but she was pregnant with his child at the time. The mother and youngest child's father resumed contact in the summer of 2019. Following a violent incident, the mother secured a protective order against the father of the youngest child. The mother asked for the protective order to be dismissed in the months following the youngest child's birth.

In early 2020, "rumors" began to circulate that the mother was involved with a man who was a known drug user, sex offender, and suffered from mental-health issues. DNA tests later confirmed this man, who the mother met while participating in drug court during the oldest child's initial DHS intervention, was the biological father of the middle child. The mother informed DHS this man stayed at her home temporarily. However, when it was clear his presence in the home was a problem, the mother told DHS she lied and it was another paramour at her home. The middle child's father was committed due to self-harm. He indicated the mother

allowed him to meet his child prior to his commitment. He testified at the termination hearing that he did not remember making that claim. The youngest child was also removed from the mother's custody.

In the spring of 2020, the mother began a relationship with another man and did not inform DHS. The couple married, and together they swore affidavits that this man was the biological father of all three children. Both the mother and the new husband knew the affidavits were false. In April 2020, the mother provided a hair-stat test that was positive for methamphetamine, but a urine test from the same day was negative. In June, the mother "was served with a forcible entry and detainer for non-payment of rent from March, April, and May." The mother's mental-health treatment provider also indicated the mother had missed three appointments. The mother submitted to a substance-abuse evaluation in June, but "was not necessarily forthcoming about her most recent positive test." When DHS updated the provider with information about the positive test, "intensive outpatient treatment was recommended."

The juvenile court terminated the parental rights of the mother pursuant to Iowa Code section 232.116(1)(d), (f), (h), (i), and (*l*). The middle child's father's parental rights were terminated pursuant to Iowa Code section 232.116(1)(b), (d), (h), (i), and (*l*). They separately appeal.

## II.    Standard of Review

"Our review of termination of parental rights proceedings is de novo." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). We give weight to the juvenile court's factual determinations, particularly pertaining to witness credibility, but we are not bound by them. *Id.* An order for termination of parental rights will be upheld on

clear and convincing evidence, "when there are no 'serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *Id.* (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

### III.   Discussion

The oldest two children were adjudicated children in need of assistance (CINA) pursuant to Iowa Code section 232.2(c)(2), (n), and (o) (2019).  The youngest child was adjudicated CINA pursuant to section 232.2(c)(2) and (n).

####     A.    The Mother

The mother argues that the removal order for the oldest two children is deficient and no valid removal order exists for the youngest child.  The State argues that error has not been preserved on this issue.  "The general rule that appellate arguments must first be raised in the trial court applies to [child-in-need-of-assistance] and termination of parental rights cases."  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012); *accord In re A.M.H.*, 516 N.W.2d 867, 872 (Iowa 1994).  We find no record of an insufficient-order issue being raised before the juvenile court.  Accordingly, we conclude this issue is not preserved for our review.  *See A.M.H.*, 516 N.W.2d at 872.  Furthermore, once a child has been placed in the custody of DHS pursuant to a dispositional order, error in a prior removal order becomes moot.  *See A.M.H.*, 516 N.W.2d at 871 (finding alleged error in ex parte removal order was moot upon entry of dispositional order placing child in DHS custody).

The mother next challenges the evidence supporting each ground for termination of her parental rights and argues termination is not in the best interests of the children.  "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence."  *D.W.,*

791 N.W.2d at 707. Thus, if we affirm termination of the mother's parental rights to each child under any one of the statutes in the juvenile court order, that will be sufficient to sustain termination. *See id.*

The mother's parental rights to the oldest child were terminated pursuant to Iowa Code section 232.116(1)(f) (2020), which allows for termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than 30 days.
> (4) There is clear and convincing evidence at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother's parental rights to the two younger children were terminated pursuant to section 232.116(1)(h), which authorizes termination when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated [CINA] pursuant to section 232.96.
> (3) The child had been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

*Id.* § 232.116(1)(h).

The oldest two children were adjudicated in need of assistance following allegations the children were neglected due to the mother's use of methamphetamine while parenting. Drug tests performed on the two children were positive for the drug. The mother allowed both of her parents to supervise the children during the period DHS was involved with the family even though she was

aware of the grandparents' methamphetamine use. The home the mother shared with the children prior to removal was also inappropriate, as it had no running water, "toilets were flushed with the use of a large jug of water," and the only heat available was due to numerous space heaters. At the time the youngest child was adjudicated in need of assistance, following adjudication of the older two siblings, there was a protective order in place between the mother and the youngest child's father. The protective order was predicated on the father's history of "substance abuse, domestic violence, and inappropriate supervision."

At the time of the termination hearing, the mother had yet to address her substance-abuse issues following the positive hair-stat test in April 2020 and her most recent substance-abuse evaluation. The mother also failed to prioritize her children over the men in her life, evidenced by her dishonesty regarding the paternity of her children, the identity of men present in her home, and secret marriage to a man with a history of substance abuse at the time of termination. The mother also testified at the time of termination that a writ of removal had been filed to evict her from her home. She testified that her husband's family helped her find a two-bedroom rental home and that his family was supportive, but she also testified she would likely be seeking a dissolution in the near future.

The mother's argument focuses on the final element of termination pursuant to both section 232.116(1)(f) and (h), requiring "clear and convincing evidence that the child[ren] cannot be returned to the custody of the child's parents as provided in section 232.102." *Id.* § 232.116(1)(f)(4), (h)(4). The mother has had several opportunities to engage in services for substance abuse and domestic violence and to prioritize her children. She has failed to do so. The record shows the

mother was offered or received services but the circumstances that led to adjudication continue to exist and the children cannot be returned to the mother's custody. Termination pursuant to Iowa Code section 232.116(1)(f) and (h) is supported by clear and convincing evidence.

The mother also argues termination is not in the best interests of the children. However, the mother continues to have unaddressed substance-abuse issues and has an extensive history of prioritizing relationships with inappropriate paramours. Even at the time of termination, the mother's testimony wavered on her decision to divorce her husband, who was incarcerated due to drug issues. These facts cannot permit a finding her custody is "the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Accordingly, we affirm termination of the mother's parental rights.

B. The Father of the Middle Child

The child's father also challenges the evidence supporting each statutory ground utilized for the termination of his parental rights. We need only find clear and convincing evidence supporting one statutory provision to sustain termination. *D.W.*, 791 N.W.2d at 707.

The child at issue was born in 2017. The child's father became aware that he was the biological father in October 2019. He chose to not participate in services at that time because he "was unsure whether or not he wanted to be involved in services and [the child]'s life due to missing a substantial amount of [the child]'s life." The father was advised to keep in touch with DHS and alert the agency if and when he decided to participate in services. In January 2020, DHS

was made aware that the father had been introduced to the child outside of DHS supervision and had also been interacting with the other children. The father became involved in the juvenile court, which took judicial notice of his prior juvenile court involvement for another child. The father's issues in the two cases are nearly identical. The father has a history of untreated substance-abuse and mental-health issues, and he is a registered sex offender. Throughout the pendency of the father's involvement with this child, he has again failed to address his substance-abuse and mental-health issues. The father has also had three sex offender registration violations, and the juvenile court was made aware of a recent allegation of assault with intent to commit sexual abuse against the father.

The juvenile court found the child was adjudicated "after the finding that [the child] was neglected as a result of the actions or omissions of one or both parents and that the court has previously adjudicated a child who is a member of the same family, . . . to be a" CINA. The father was offered services for his history of substance-abuse and mental-health issues after paternity tests proved he was the biological father of the child. He was also offered services to promote positive general life skills. At the time of termination, the father was unemployed and had no driver's license. He acknowledged his interaction with telehealth mental-health services was inconsistent and blamed his remote location and lack of technological resources throughout the COVID-19 pandemic. The father participated in a substance-abuse evaluation the day before he testified and argued his verbal commitment to complete the recommended treatment should weigh in his favor. The father also testified he had an appointment for medication management the day after the termination trial and verbally committed to taking any prescribed

medications. The father had numerous criminal charges pending at the time of termination, including the three sex offender registry violations, one charge of operating a vehicle while intoxicated, and one drug possession charge. He acknowledged the possibility he could be sentenced to incarceration and testified his family could care for the child during his confinement.

The father also targets the final element of section 232.116(1)(h). Thus, we must examine whether "there is clear and convincing evidence the child could not be returned to the parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h)(4).

The father in this case needs to engage in mental-health and substance-abuse treatment. At the time of the termination hearing, his pending criminal charges left his ability to be a custodial parent in question. We acknowledge the father's desire to engage in services at the time of termination, but eleventh hour commitments to complete services in the future are insufficient to overcome the facts at hand. We will not force this child to wait any longer for permanency. *See P.L.*, 778 N.W.2d at 41. At the time of the termination hearing, clear and convincing evidence was presented—that the child could not be returned to the father at the present time—to support termination pursuant to Iowa Code section 232.116(1)(h).

## IV. Conclusion

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**